COURT OF CHANCERY
OF THE
STATE OF DELAWARE

SELENA E MOLINA
MASTER IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Final Report: June 15, 2020
Draft Report: May 29, 2020
Date Submitted: February 20, 2020

Daniel C. Herr, Esquire
Law Office of Daniel C. Herr, Esquire
1225 N. King Street, Suite 1000
Wilmington, DE 19801

Dean A. Campbell, Esquire
Law Office of Dean A. Campbell, P.A.
Georgetown Professional Park
20175 Office Circle
Georgetown, DE 19947

Kashif I. Chowdry, Esquire
Parkowski, Guerke & Swayze, P.A
116 Water Street
P.O. Box 598
Dover, DE 19903

R. Eric Hacker, Esquire
Morris James LLP
500 Delaware Avenue
P.O. Box 2306
Wilmington, DE 19899

> Re:   *Jerita Hill, et al. v. Judy L. Myers, et al.*
>       C.A. No. 2018-0160-SEM

Dear Counsel:

Family members of the late G. Robert Dickerson initiated this matter alleging breaches of fiduciary duties and undue influence by the decedent's close friend, confidant, and attorney-in-fact during the decedent's final, most vulnerable years. The alleged offender moved to dismiss the complaint, in part, for lack of standing and failure to state a claim under Court of Chancery Rule 12(b)(6). For the following reasons, I recommend that the motion to dismiss be denied.

## I.    Background

The allegations in this action are troubling.  Plaintiffs Jerita Hill, Tammera Ward, Michael Dickerson, Pamela Dunn, Judy Northam, William Campbell, and Dean Campbell (collectively, "Plaintiffs") allege that Judy Myers ("Defendant") breached duties she owed to, and unduly influenced, G. Robert Dickerson (the "Decedent"), in the years leading up to his death on January 23, 2018.[1]  Also alleged is that Defendant acted in concert with or was assisted by Tracey Hill and Angela Hill (together, the "Non-Moving Defendants") in effectuating transactions on behalf of the Decedent that the Decedent did not, could not, or would not have approved.[2]

Specifically, Plaintiffs allege that the Non-Moving Defendants indicated interest in buying the Decedent's family farm (the "Property") but, time and again, the Decedent refused.[3]  In line with his refusal, the Decedent provided for the Property in his Last Will and Testament executed on or about June 30, 1999 (the "Will");[4] in short:  the value of the Property was to pass to Plaintiffs.  But, once the Decedent was hospitalized,[5] and only after Defendant was granted power of attorney

---

[1] Unless otherwise noted, the facts recited herein are taken from the operative pleading, the Second Amended Complaint. Docket Item ("D.I.") 41.
[2] *Id.* ¶ 93.
[3] *Id.* ¶¶ 20, 80.
[4] *Id.* ¶ 13. *See also* D.I. 41, Ex. A.
[5] D.I. 41 ¶ 17.

over the Decedent's affairs,[6] Defendant caused the Property to be sold to the Non-Moving Defendants at what Plaintiffs describe as a "fire-sale price."[7]

Plaintiffs filed their initial complaint on March 8, 2018, their first amended complaint on September 10, 2018, and the operative complaint, the Second Amended Complaint, on June 11, 2019.[8] The Second Amended Complaint contains eight counts: Count I – Breach of Fiduciary Duty by Defendant, Count II – Undue Influence and Lack of Capacity to Appoint Defendant as Attorney-In-Fact, Count III – Declaratory Judgment, Count IV – Accounting, Count V – Undue Influence to Invalidate the Will, Count VI – Breach of Fiduciary Duty and Self-Dealing by one of the Non-Moving Defendants, Count VII – Aiding and Abetting A Breach of Fiduciary Duty and Conspiracy to Breach of Fiduciary Duty, and Count VIII – Rescission of Deed for the Property.

On June 28, 2019, Defendant filed a motion to dismiss seeking dismissal of Count I for lack of standing and failure to state a claim and Counts II and III for

---

[6] *Id.* ¶ 57.
[7] *Id.* ¶¶ 29, 30.
[8] D.I. 1, 30, 41.

failure to state a claim (the "Motion").[9] The Motion was briefed and argument was held on February 20, 2020.[10] This is my final report.[11]

## II. Analysis

Defendant frames the Motion under Rule 12(b)(6) arguing both failure to state a claim and lack of standing.[12] The standards governing a motion to dismiss for failure to state a claim are settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and ([iv]) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[13]

Likewise, standing in the attorney-in-fact context was recently addressed by Vice Chancellor Zurn in *In Re Corbett v. Corbett*[14] where she recognized in the estate context,

---

[9] D.I. 44. Defendant initially sought to dismiss Count IV, as well, but that request is no longer pending. *See* D.I. 60 (granting in part and denying in part the Motion regarding Count IV such that "[s]hould Plaintiffs prevail on their Second Amended Complaint Count V, Plaintiffs may continue to pursue their Second Amended Complaint Count IV").

[10] *See* D.I. 57.

[11] This report makes the same substantive findings and recommendations as my May 29, 2020 draft report to which no exceptions were filed.

[12] Plaintiffs submitted information outside the operative complaint with their answering brief and begged conversion of the Motion to one for summary judgment. *See* D.I. 51 at 8-9. I find such conversion is unnecessary and inappropriate and consider the Motion as one to dismiss on the pleadings, without consideration of the discovery materials.

[13] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896-97 (Del. 2002) (quotation marks and citations omitted).

[14] 2019 WL 6841432 (Del. Ch. Dec. 12, 2019).

> [a] petitioner has standing to challenge a fiduciary's actions taken to the detriment of a decedent's estate where the petitioner has standing to challenge the decedent's will. In the context of a will challenge or caveat, standing depends on whether the petitioner is an "interested person" whose "interest must be pecuniary and one detrimentally affected by the will, and not a mere sentimental interest." A beneficiary named under the decedent's current or prior will has standing to bring a caveat challenging the validity of a will before it is admitted to probate. And where the decedent's current and prior wills disinherit the petitioner, the petitioner is an interested person with standing to challenge a will if she would be an intestate beneficiary.[15]

With these standards in mind, I address each count in turn.

### A. Plaintiffs Have Adequately Pled A Breach of Fiduciary Duty Claim And Their Standing to Pursue It.

Count I is titled Breach of Fiduciary Duty and is aimed at Defendant for the role she played in the Decedent's final years and alleged improper conduct in that regard. "A claim for breach of fiduciary duty is an equitable tort. It has only two formal elements: (i) the existence of a fiduciary duty and (ii) a breach of that duty."[16] In the attorney-in-fact context, the "attorney-in-fact serves as a fiduciary for his principal."[17] The Delaware Supreme Court has likened this common-law fiduciary relationship to the relationship created by a trust. Thus, like a trustee, an attorney-in-fact owes a duty of loyalty and "always has the obligation to act in the best interest

---

[15] *Id.* at *4 (Del. Ch. Dec. 12, 2019) (citations omitted).

[16] *HOMF II Inv. Corp. v. Altenberg*, 2020 WL 2529806, at *43 (Del. Ch. May 19, 2020).

[17] *Pennewill v. Harris*, 2011 WL 691618, at *3 (Del. Ch. Feb. 4, 2011).

of the principal unless the principal voluntarily consents to the attorney-in-fact engaging in an interested transaction after full disclosure[.]"[18]

Defendant concedes in her opening brief that she owed fiduciary duties to the Decedent but argues that she did not breach those duties or, even if we assume she did, Plaintiffs lack standing. Plaintiffs disagree, emphasizing the allegations in the Second Amended Complaint that Defendant sold and conveyed the Property "at a fire-sale price," which was "financially unreasonable and unnecessary for Decedent's benefit" but benefitted Defendant against the Decedent's wishes and to the detriment of Plaintiffs.[19] I agree with Plaintiffs that the pleading states a cognizable claim for breach of fiduciary duty that Plaintiffs have standing to pursue.

The Second Amended Complaint sets forth detailed factual allegations painting a questionable, at best, picture of Defendant's conduct. Per the Second Amended Complaint, Defendant used her position of trust and confidence to sell the Property against the Decedent's wishes, needs, and interests at a reduced value and in a way that ensured the proceeds of the sale flowed to Defendant and her family. Although Defendant may ultimately be able to prove that the sale was appropriate, construing the facts in a light most favorable to Plaintiffs, I find Count I states a

---

[18] *Schock v. Nash*, 732 A.2d 217, 225 (Del. 1999).
[19] D.I. 41, ¶¶ 32-39.

cognizable claim for breach of fiduciary duty.[20]  Likewise, I find Plaintiffs have met their burden to plead standing to pursue this claim.  Plaintiffs are the intestate heirs of the Decedent's estate and the intended beneficiaries of the Property under the Will; both positions grant them standing to pursue claims against Defendant for her role in allegedly thwarting their interests.

### B.  Count II States A Cognizable Claim of Undue Influence.

Defendant seeks dismissal of the undue influence claim in Count II.  An undue influence claim must be supported by well-pleaded facts substantiating four elements: "(1) a person who is subject to undue influence; (2) an opportunity to exert influence; (3) a disposition to exert such influence; and (4) a result indicating the presence of undue influence."[21]  Defendant contends the last element is unsupported and, as such, Count II must be dismissed.  Specifically, Defendant argues that the only "result" pled is the sale of the Property and that sale, "in and of itself" does not indicate the presence of undue influence.  Defendant, in support, points to reasons why she believes the sale was appropriate (e.g., the Decedent was no longer residing at the Property and it did not make sense for him to continue to maintain it).

---

[20] Defendant cites *Hodgson for Hodgson v. Gibson*, 2017 WL 758959 (Del. Ch. Feb. 24, 2017) as support for the propriety of her actions.  The deep factual analysis conducted in *Hodgson* undermines, however, the need for further factual development of the fiduciary-duty claim.  The utility of *Hodgson* will be best understood later in this action, such as on a motion for summary judgment or pre- or post-trial briefing.
[21] *McAllister v. Schettler*, 521 A.2d 617, 623 n.4 (Del. Ch. Dec. 2, 1986).

Plaintiffs respond that Defendant is ignoring the "reality of the facts as they existed and the equities involved[,]" emphasizing that the Decedent had sufficient assets without selling the Property and the timing and nature of the sale shows "no urgency – only opportunity."[22]  I tend to agree, at least at this pleading stage.

Although Defendant may well be able to prove, after discovery, that the sale of the Property was appropriate, the Second Amended Complaint, nonetheless, pleads a cognizable claim of undue influence.  The Second Amended Complaint avers that the Decedent consistently resisted a pre-death sale of the Property and indicated an interest in keeping it (or, at least, its value) "in the family."  Consistent with that refusal, he set forth in the Will what was to become of the Property upon his death (it would be sold at auction with proceeds going to Plaintiffs).  Yet, after the Decedent was hospitalized, Defendant effectuated the previously-rejected sale, which converted real property, bequeathed to Plaintiffs under the Will, into a liquid asset that would, instead, pass to Defendant and her family.  Defendant argues that the transaction was in line with the Decedent's wishes; the Second Amended Complaint adequately alleges otherwise; only after full discovery can the dispute be resolved.  Plaintiffs have pled a cognizable claim for undue influence and the Motion, as it relates to Count II, should be denied.

---

[22] D.I. 51 at 16-17.

*C. Count III States A Claim for Declaratory Judgment.*

Count III is titled Declaratory Judgment and seeks a declaration that the lack of a residuary clause in the Will should be interpreted such that the residue passes to Plaintiffs by intestate succession. Defendant argues that the Will does have a residuary clause, namely paragraph four; it provides, in pertinent part:

> property left in the house is to be sold along with the rest of my personal property including all farm machinery- cars and truck, tools, will be sold at auction. The money from that sale will be put in my estate consisting of CD's, stocks, bonds, checking, saving, IRA, and credit union life insurance to be equally divided to Judy Meyers, Craig Meyers, Aaron Meyers, Cheryl Meyers and Tina Jobes.[23]

Determining whether paragraph four is a residuary clause and, if not, how the residue should pass, requires appropriate interpretation and construction of the Will. "In this Court's interpretation of the language of a will or trust, the testator's or settlor's intent controls, considering 'his or her dominant purpose.'"[24] In reviewing a will, two principles guide this Court: "1) where the language of a will is unambiguous, the court must enforce its terms as written and 2) where the language used in a will is ambiguous, the court must give the language that meaning which

---

[23] D.I. 41, Ex. A.
[24] *In re Will of Fleitas*, 2010 WL 4925819, at *4 (Del. Ch. Nov. 30, 2010) (citations and quotations omitted).

will effectuate the intent of the testator."[25]  When the language is unambiguous, and

rather "clear and readily understandable, extrinsic evidence is not considered."[26]

"Ambiguity exists when the terms in question are reasonable or fairly susceptible of

different interpretations or may have two or more different meanings.  And, if a

mistake was made in writing a will, the Court of Chancery does not have the power

to correct a mistake, and it cannot, by introduction of parol evidence, rewrite the

[will]."[27]

Ultimately, I find paragraph four ambiguous.  I cannot say with any certainty

whether paragraph four is a bequest of all of the Decedent's remaining property to

the named beneficiaries (i.e., a residuary clause), as Defendant contends, or one of

only the sale proceeds, as argued by Plaintiffs.[28]  On the current record, I find either

interpretation of this ambiguous provision is reasonable.  "At the motion to dismiss

stage, [I] cannot choose between two differing reasonable interpretations of

---

[25]  *Id.* (citations and quotations omitted).

[26]  *In re Brans*, 2017 WL 7048673, at *3 (Del. Ch. Dec. 1, 2017), *adopted* (Del. Ch. 2018) (citations and quotations omitted).

[27]  *Id.* (citations and quotations omitted).

[28]  The former construction would allay concerns about surplusage (i.e., why would the testator take time to identify that his estate consists of CD's, stocks, bonds, etc. but make no provision for that property under the Will).  *See Hodgson*, 2017 WL 758959, at *3 ("it is a basic rule of construction that a court will prefer an interpretation that gives effect to each term of an agreement and avoids rendering language superfluous or uselessly repetitive").  Although the latter is, arguably, a more precise reading of the second sentence, as written (the sentence begins by identifying the subject as the proceeds from the sale contemplated in the preceding sentence and then explains what shall happen to the proceeds: they go into the full estate and then they (meaning the proceeds) are to be equally divided among the named beneficiaries).

ambiguous provisions. Dismissal is appropriate on a Rule 12(b)(6) motion only if the [Defendant's] interpretation is the *only* reasonable construction as a matter of law."[29] It is not and, as such, the Motion, as it relates to Count III, should be denied. Denial at this stage serves a dual purpose of avoiding unnecessary construction of the Will while a request to invalidate it in full remains pending.

### D. Fee Shifting Is Not Warranted.

Plaintiffs ask that I shift fees and expenses incurred in responding to the Motion, which Plaintiffs contend was "frivolous" and "ridiculous." I disagree. Although ultimately unsuccessful, the Motion was narrowly tailored to only three (3) of the eight (8) counts in the Second Amended Complaint and presented reasoned, non-frivolous, and good faith arguments. Fees should not be shifted.[30]

## III. Conclusion

For the foregoing reasons, I find that Plaintiffs have pled a cognizable claim for breach of fiduciary duty and have standing to pursue it as either beneficiaries under the Will or intestate heirs. Likewise, Counts II and III state reasonably conceivable claims for undue influence and declaratory judgment, respectively, and

---

[29] *Paul Elton, LLC v. Rommel Del., LLC*, 2020 WL 2203708, at *5 (Del. Ch. May 7, 2020) (addressing contract interpretation) (citations and quotation marks omitted).

[30] *See Univ. of Del. v. Warrington*, 1993 WL 410417, at *4 (Del. Ch. Oct. 6, 1993) ("Under Delaware law, attorney fees may be awarded when a party acts in bad faith, vexatiously, frivolously, wantonly, fraudulently, or oppressively.").

should move to merits-based discovery. Accordingly, I recommend the Motion be denied. I further recommend that the request for fee-shifting be denied because it is not warranted under the circumstances. This is my final report in this matter and exceptions should be taken in accordance with Rule 144.

Respectfully,

*/s/ Selena E. Molina*

Master in Chancery